IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GARY B.,[1] | : | Case No. 3:20-cv-179 |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ORDER**

**I.  INTRODUCTION**

Plaintiff filed an application for Supplemental Security Income in July 2016. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 15), Plaintiff's Reply (Doc. 16), and the administrative record (Doc. 11).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since December 1, 2012. He was 51 years old as of the Supplemental Security Income application date of July 12, 2016. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations for the relevant time period. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).[2] Plaintiff has "a high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 11-12, PageID 56-68 ), Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 15), and Plaintiff's Reply (Doc. 16). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." (*Id.*)

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (*Id.*) (citation omitted).

3

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since July 12, 2016, the Supplemental Security Income application date.

Step 2: He has the severe impairments of "chronic pain syndrome, sacroiliitis, lumbosacral radiculopathy, lumbosacral spondylosis and degenerative disc disease, cervical degenerative disc disease and radiculopathy, chronic obstructive pulmonary disease (COPD[)], major depressive disorder, dysthymic disorder, and anxiety disorder."

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

4

| | |
|---|---|
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[Plaintiff] cannot climb ropes, ladders, or scaffolds. [Plaintiff] can occasionally climb ramps and stairs, crouch, crawl, balance on uneven, moving, or narrow surfaces, kneel, and stoop. [Plaintiff] cannot reach overhead with the right upper extremity. [Plaintiff] can frequently reach in all other directions at shoulder level bilaterally. [Plaintiff] cannot engage in work involving any exposure to extreme hot and cold temperatures, excessive humidity or wetness, unprotected heights, dangerous moving machinery, or commercial driving. [Plaintiff] can have occasional exposure to dust, fumes, odors, gases, and other pulmonary irritants. [Plaintiff's] work cannot involve production rate work or strict production quotas. [Plaintiff's] work must involve few, if any, changes in work processes. [Plaintiff] can have occasional interaction with coworkers and supervisors. [Plaintiff] cannot interact with the general public or engage in tandem or team work."<br><br>He is unable to perform any of his past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. |

(Doc. 11-2, PageID 56-68.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 68.)

## V. ANALYSIS

Plaintiff argues that the ALJ's RFC determination is unsupported by her own analysis and the medical evidence. (Doc. 12, PageID 3484.) For the reasons discussed below, the ALJ's conclusions are supported by substantial evidence and thus cannot be reversed by this Court.

### A. **ALJ's Analysis of the Evidence**

Plaintiff first contends that the ALJ's limitation to light work is "inconsistent with her own analysis of the evidence." (*Id.*) Plaintiff cites to several examinations and medical imaging reports and asserts this evidence does not support the ALJ's RFC for light work. (Doc. 12, PageID 3484-87.) Plaintiff also asserts the ALJ is "not qualified to interpret this substantial objective imaging data in functional terms." (Doc. 12, PageID 3485-86; Doc. 16, PageID 3510-12.)

The regulations require the ALJ to evaluate the medical evidence to determine whether Plaintiff is disabled. *See* 20 C.F.R. § 404.1545(a)(3); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (stating, "the ALJ is charged with the responsibility of evaluating the medical evidence"); *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC. . . . An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

Further, the substantial-evidence standard discussed above "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (citation omitted). Therefore, if substantial evidence supports the ALJ's decision, this Court will defer to that finding, "even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley,* 581 F.3d 399, 406 (6th Cir. 2009).

6

The ALJ's RFC determination is clearly articulated and supported by substantial evidence. The ALJ provided a detailed summary of Plaintiff's medical records, which included citations to all of the evidence cited by Plaintiff. (Doc. 11-2, PageID 60-66.) Plaintiff specifically cites to a January 2017 lumbar spine MRI, a March 2017 cervical spine MRI, and a January 2018 thoracic spine CT scan. (*Id.*) In evaluating these reports in the RFC analysis section of the decision (Doc. 11-2, PageID 62-63), the ALJ did not interpret the objective medical data beyond her ability. As discussed above, the regulations require the ALJ to evaluate the medical evidence to determine whether Plaintiff is disabled. *See* 20 C.F.R. § 404.1545(a)(3); *Webb*, 368 F.3d at 633; *Coldiron*, 391 F. App'x at 439.

In this case, the imaging reports cited by Plaintiff were read and interpreted by a radiologist. (Doc. 11-17, PageID 2560, 2634, 3152). The ALJ cited the radiologists' interpretations in her detailed summary of the medical evidence. (Doc. 11-2, PageID 62-63.) She balanced these interpretations with the other objective medical evidence to assess the RFC. For example, the ALJ acknowledged many of the abnormal examination findings in the record. (*Id.*) She cited to examinations that showed limited lumbar range of motion, stooped posture, and an antalgic, ataxic, or limping gait. (*Id.*, citing, e.g., Doc. 11-17, PageID 2558, 2600-01, 2603, 2614-15, 2623; Doc. 11-20, PageID 3123.) The ALJ accurately explained that these examinations also showed other normal findings which included normal motor strength in the upper and lower extremities, as well as normal and symmetric deep tendon reflexes. (*Id.*) The ALJ balanced these findings with other relatively normal examinations, many of which showed normal range of motion, normal

7

motor functioning, intact sensation in the upper and lower extremities, no back or neck tenderness, and no significant ambulatory difficulties. (*Id.,* citing, e.g., Doc. 11-16, PageID 2402-03; Doc. 11-17, PageID 2489-90; Doc. 11-19, PageID 2939; Doc. 11-20, PageID 3161-62; Doc. 11-21, PageID 3384-85.) She concluded that the preponderance of the evidence supports the reduced range of light work set forth in the RFC. This conclusion is supported by substantial evidence.

Plaintiff points to several of the abnormal examination findings identified in the ALJ's decision and states that "the ALJ's own description of these physical examinations…does not support a finding that [Plaintiff] can perform light exertion work." (Doc. 12, PageID 3484-85.)  Plaintiff further contends: "While these exams are arguably consistent with sedentary exertion work because [Plaintiff] was could [sic] sit or briefly rise from a chair, they are not consistent with light exertion work which, again, requires 'a good deal of walking or standing.'" (*Id.*, PageID 3485.)

Plaintiff's contention is without merit. As discussed above, the regulations and Sixth Circuit precedent charge the ALJ with the responsibility of evaluating and weighing the medical and non-medical evidence to render an RFC finding. *See* 20 C.F.R. § 404.1545(a)(3); *Webb,* 368 F.3d at 633; *Coldiron*, 391 F. App'x at 439. The ALJ provided a detailed summary of Plaintiff's medical records, and she balanced the normal findings against the abnormal findings and pathology to conclude Plaintiff can perform a reduced range of light work. (Doc. 11-2, PageID 60-65.) For the reasons discussed above, this conclusion is supported by substantial evidence. The applicable legal framework did not require her to do more.

### B. State Agency Medical Consultants

State agency medical consultant Leigh Thomas, M.D. reviewed the record and completed a physical RFC assessment on October 13, 2016. (Doc. 11-3, PageID 130-33.) Dr. Thomas opined that Plaintiff was limited to light exertion, subject to the following limitations: never climb ladders, ropes, or scaffolds; occasionally perform all other postural activities; occasional right-sided overhead reaching; avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and pulmonary irritants; and avoid all exposure to hazards. (*Id.*) Stephen Sutherland, M.D. reviewed the updated record at the reconsideration level on November 29, 2016. Dr. Sutherland essentially affirmed Dr. Thomas' assessment, except he opined Plaintiff could frequently balance, stoop, and kneel. (Doc. 11-3, PageID 146-48.)

The ALJ gave significant weight to the opinions of the State agency medical consultants. (Doc. 11-2, PageID 65.) The ALJ reasoned that the consultants based their opinions on their expertise and review of the medical records, and she concluded that their opinions are generally consistent with the additional evidence received at the hearing level. (*Id.*) The ALJ explained that the medical evidence since the reconsideration level supported additional postural limitations compared to Dr. Sutherland's opinion. (*Id.*) Further, the ALJ included more restrictive limitations in the RFC, such as no overhead reaching with the right upper extremity, frequent reaching in all other directions at shoulder level bilaterally. (*Id.* at PageID 59.)

Plaintiff takes issue with the ALJ's evaluation of the consultants' opinions and argues that the consultants "already limited [Plaintiff] to light work in 2016 without

9

reviewing the substantial material evidence in the record," including the MRI and CT scan reports discussed above. (Doc. 16, PageID 3512.) This argument is not persuasive.

The ALJ evaluated the findings of the State agency medical consultants and assigned weight pursuant to the regulations. (Doc. 11-2, PageID 65.) As discussed above, the ALJ provided a detailed summary of Plaintiff's medical records in the RFC assessment portion of the decision. (Doc. 11-2, PageID 60-65.) She weighed the State agency medical consultants' opinions against the evidence for the entire relevant time period—including the evidence cited by Plaintiff in his Statement of Errors—and she provided good reasons for the weight assigned to these reviewers. (*Id.* at PageID 65.) The ALJ provided good reasons for concluding that a reduced range of light work accounts for the balance of the evidence, but she also recognized a need for additional limitations to account for evidence submitted after the consultants' 2016 assessments. (*Id.*) For example, the ALJ further limited Plaintiff to occasional kneeling and stooping, and she explained that the additional stooping restriction accounted for the January 2018 CT scan. (*Id.* at PageID 59, 65) The ALJ also limited Plaintiff to no right-sided overhead reaching and frequent reaching in all other directions bilaterally. (*Id.* at PageID 59.) The ALJ's conclusions are supported by substantial evidence, and the applicable legal framework did not require her to do more.

### C. **Plaintiff's Use of a Cane**

Plaintiff also contends: "The ALJ also found that [Plaintiff's] cane was prescribed, but inexplicably failed to evaluate whether the cane was medically necessary and/or incorporate [Plaintiff's] prescribed cane use into her RFC determination." (Doc. 12,

10

PageID 3485, citing Doc. 11-2, PageID 60.) However, Plaintiff's statement mischaracterizes the ALJ's decision, because the ALJ did not "find" that Plaintiff's cane was prescribed. Instead, the ALJ merely restated Plaintiff's testimony that he "uses a cane, which was prescribed." (*Id.*)

The Sixth Circuit has held that if a cane is not a necessary device for the claimant's use, it cannot be considered a restriction or limitation on the plaintiff's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). Further, if the ALJ does not find that such device would be medically necessary, then the ALJ is not required to pose a hypothetical to the vocational expert. *Casey v. Sec'y of Health Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ is only required to pose to the vocational expert those limitations found to be credible. *Id.* This Court has recognized that "multiple references in the medical evidence to the use of a cane" can lead to an inference that such use is "more than just a subjective desire of the claimant." *Penn v. Astrue*, 2010 WL 547491, at *6 (S.D. Ohio Feb. 12, 2010) (Holschuh, D.J.) (citation omitted). Further, the "consistent reference" to the use of a cane triggers an ALJ's obligation to determine if a cane is medically necessary. *Id.* Conversely, this Court has also recognized that in cases where there was no medical documentation stating that a claimant needed to use a cane, the ALJ "did not err either by (1) omitting any consideration of the claimant's cane usage in assessing the claimant's capacity for work, or (2) declining to explain that omission." declining to explain that omission. *Ethel R. v. Comm'r of Soc. Sec.,* No. 1:20-CV-69, 2022 WL 190043, at *3 (S.D. Ohio Jan. 21, 2022) (Cole, D.J.) (citations omitted).

11

Plaintiff's case falls into the latter category. The record in this case does not contain "consistent reference" to the use of a cane. In fact, other than Plaintiff's testimony, the record contains no references to the use of a cane. For example, although Plaintiff testified that he used a cane, Plaintiff made no mention of any ambulation aids in the August 2016 Function Report (Doc. 11-6, PageID 287.). Likewise, the medical records do not document any use of a cane or a prescription for a cane. As the ALJ accurately pointed out, Plaintiff's providers documented an ataxic or limping gait on some occasions, yet they documented a normal gait on several other occasions. (Doc. 11-2, PageID 60-64, citing, e.g., Doc. 11-17, PageID 2480, 2558, 2600; Doc. 11-20, PageID 3075, 3123.) They did not indicate that Plaintiff was using a cane on any of these occasions, or during any other medical visits in the record. (*Id.*) Accordingly, the record does not contain "consistent" or "multiple" references to the use of a cane, and thus the ALJ is not obligated to determine whether a cane is medically necessary.

Plaintiff contends that a cane "would be medically necessary if the record reflects more than just a subjective desire on the part of the Plaintiff as to the use of the cane." (Doc. 12, PageID 3485, citing *Simmons v. Comm'r of Soc. Sec.*, No. 1:12-CV-2591, 2013 WL 3873952, *at 29 (N.D. Ohio July 9, 2013) (Adams, D.J.). However, Plaintiff identified no evidence showing that a physician prescribed a cane or that the use of a cane is medically necessary. (*See* Doc. 12, Doc. 16.)  In fact, as discussed above, the medical evidence contains no reference to the use of a cane.  The fact that Plaintiff's medical providers documented observations of Plaintiff's gait but did not document the use of an ambulation aid (*see* Doc. 11-2, PageID 60-64, citing, e.g., Doc. 11-17, PageID 2480,

12

2558, 2600; Doc. 11-20, PageID 3075, 3123) supports the conclusion that Plaintiff did not need or use a cane. Thus, the record does not warrant an inference that Plaintiff had "more than just a subjective desire" to use a cane. *See Penn,* 2010 WL 547491, at *6. For all of these reasons, substantial evidence supports the conclusion that a cane is not a necessary device for Plaintiff's use, and it cannot be considered an exertional limitation that reduces his ability to work. *See Carreon,* 51 F. App'x at 575. The ALJ's failure to evaluate Plaintiff's testimony that he used a cane is not reversible error, because the applicable legal framework did not require him to do so.

### D. State Agency Psychological Consultants

Finally, Plaintiff argues that the ALJ erred because she gave significant weight to the opinions of the State agency psychological consultants but did not incorporate all of their limitations into the RFC. (Doc. 12, PageID 3486-87.) For the reasons discussed below, Plaintiff's contention is not well-taken.

Patricia Kirwin, Ph.D. reviewed Plaintiff's file on behalf of the State agency on October 13, 2016. (Doc. 11-3, PageID 133-35.) Dr. Kirwin opined that Plaintiff retained the ability to understand and remember one- to four-step tasks involving no high pace or high production quotas. (*Id.* at PageID 133-34.) According to Dr. Kirwin, Plaintiff could interact "briefly and occasionally in situations that do not require more than superficial contact with coworkers, supervisors, and the general public." (*Id.* at PageID 134.) He further opined that Plaintiff could not resolve conflicts or persuade others to follow demands and that changes needed to be occasional and explained in advance. (*Id.* at 134-35.)

13

Vicki Warren, Ph.D. reviewed the updated record on November 29, 2016. (*Id.* at PageID 148-50.) Dr. Warren opined that Plaintiff was limited to performing routine tasks in a setting with no strict production demands and with relatively static duties. (*Id.* at PageID 149-50.) Dr. Warren also opined that Plaintiff could interact with others on a "superficial level" and that he was unable to perform customer service duties, conflict resolution, or persuading others. (*Id.* at PageID 149.)

The ALJ assigned "significant weight" and found that the consultants' opinions are generally consistent with the evidence. (Doc. 11-2, PageID 65-66.) In the RFC, the ALJ limited Plaintiff to work involving no production rate work or strict production quotas; few, if any, changes in work processes; occasional interaction with coworkers or supervisors; no interaction with the general public; and no tandem or team work. (*Id.* at PageID 59.)

Plaintiff contends that the ALJ failed to adequately evaluate the administrative findings of Drs. Kirwin and Warren because the "ALJ failed to incorporate their finding that [Plaintiff] was limited to a work environment that did not require more than 'superficial' contact with co-workers and supervisors." (Doc. 12, PageID 3486-87.) According to Plaintiff, "'occasional' and 'superficial' are not coterminous," and the ALJ failed to meet her burden at Step Five because "the Court cannot discern whether the additional limitation to superficial contact would preclude substantial gainful employment in the national economy." (*Id.* at PageID 3487, citing *Perrine v. Berryhill*, No. 1:18-CV-49, 2019 WL 1331597, at *7 (N.D. Ohio Mar. 25, 2019) (Ruiz, M.J.).)

14

Plaintiff correctly asserts that the terms "occasional" and "superficial" are not interchangeable. This Court has routinely recognized that "occasional contact" refers to the *quantity* of time spent with individuals, while "superficial contact" goes to the *quality* of the interactions. *See Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL 2200423, at *6 (S.D. Ohio June 1, 2021) (Deavers, M.J.), *report and recommendation adopted,* No. 2:20-CV-2566, 2021 WL 2533191 (S.D. Ohio June 21, 2021) (Sargus, D.J.), citing, e.g., *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (Vascura, M.J.), *report and recommendation adopted sub nom. Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (Morrison, D.J.) (reversing and remanding where ALJ explanation was lacking because "superficial interaction" is a well-recognized, work-related limitation); *Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (Vascura, M.J.) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial' interactions.'"); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.) ("'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added) (citation omitted)).

Nevertheless, Plaintiff's contention lacks merit because the ALJ adequately accounted for both the quantity and the quality of social interaction in the RFC. As discussed above, Dr, Kirwin opined that Plaintiff could interact "briefly and occasionally" in situations requiring no more than superficial contact with coworkers,

15

supervisors, and coworkers. (Doc. 11-3, PageID 134.) Dr. Warren limited Plaintiff to superficial interactions with others. (*Id.* at PageID 149.) The ALJ then limited Plaintiff to "occasional interaction with coworkers and supervisors" (Doc. 11-2, PageID 59), which addresses Dr. Kirwin's opinion regarding the *quantity* of time ("occasional") that Plaintiff could spend with such individuals. The ALJ further limited Plaintiff to "tandem or team work" (*id.*), which addresses the reviewers' assessments regarding the *quality* of the interactions ("superficial") between Plaintiff and his supervisors or coworkers. Moreover, the ALJ's limitation of Plaintiff to no interaction with the general public (*id.*) is more restrictive than – and thus more than adequately accounts for – the State agency reviewers' assessment that Plaintiff is limited to superficial and/or occasional interaction with the general public. Thus, although the ALJ did not specifically explain the difference between "occasional" and "superficial," the ALJ sufficiently accounted for the difference between these terms in the RFC.

  The ALJ also did not err at Step Five of the sequential evaluation. She appropriately asked the vocational expert to testify about the jobs available to a hypothetical person with Plaintiff's work limitations, including occasional interaction with coworkers and supervisors, no tandem or team work, and no interaction with the general public. (Doc. 11-2, PageID 114-15.) *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

16

For these reasons, the ALJ's evaluation of the State agency psychological consultants' findings is supported by substantial evidence.

## VI.   CONCLUSION

In sum, although Plaintiff maintains the ALJ should have evaluated the evidence differently, substantial evidence supports the ALJ's RFC for a reduced range of light work. The ALJ also provided reasonable explanations, supported by substantial evidence, for why and how she weighed the medical opinions. Her explanations for assigning substantial weight to the opinions of the State agency medical and psychological consultants were within the zone of reasonable choices and supported by substantial evidence. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 12) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

    */s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge